Richard BEIERLE, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 21408.

United States Court of Appeals
Ninth Circuit.

July 30, 1968.

Evelyn Magnes, San Jose, Cal., for appellant.

Gerald J. Van Hoomissen, Asst. U. S. Atty., Anchorage, Alaska, for appellee.

Before HAMLIN, BROWNING, and ELY, Circuit Judges.

ELY, Circuit Judge:

Appellant Beierle was found guilty of having refused induction into the armed services in violation of section 12 of the Universal Military Training and Service Act, 50 U.S.C. App. § 462. He was thereafter sentenced to the custody of the Attorney General for a period of two years. This appeal followed.

Beierle registered with Local Board No. 2 in Fairbanks, Alaska, on October 5, 1964, in compliance with the Universal Military Training and Service Act. The local board subsequently classified him as available for military service (Class I-A), and he did not appeal from this decision. Thereafter, on January 10, 1966, the local board mailed to Beierle an order which began:

"You are hereby ordered for induction into the Armed Forces of the United States, and to report at Room #3, Federal Building, Fairbanks, Alaska at 3:30 p. m. m. [sic], on the 31st of January, 1966, for forwarding to an Armed Forces Induction Station."

Under the heading "IMPORTANT NOTICE," the document then listed a number of instructions, among which were the following:

"This Local Board will furnish transportation, and meals and lodging when necessary, from the place of reporting designated above to the induction station where you will be examined and, if found qualified for service, you will then be inducted into a branch of the Armed Forces. * *

* * * * * *

" * * * You must keep this form and bring it with you when you report for induction."

After receiving this order, but at a time prior to January 24, 1966, Beierle appeared in person at the office of his local board. He informed the board's clerk that he anticipated that some problems would arise if he were forwarded to the induction center, which, in his case, was located in Anchorage, Alaska, and then to an armed forces' training post. The record discloses that Beierle was primarily concerned about the fact that he was a vegetarian, eschewing the use of animal products, even those such as leather. The clerk of the local board was unable to assist Beierle with this problem, but she permitted his use of Government telephone lines to contact several officials to whom the clerk referred him. None of the Government officials contacted by Beierle were able to offer any help in resolving the problem which he professed to apprehend. Beierle then requested that he be sent to the Anchorage induction center at an earlier date, so that he might attempt to resolve his problems there. The clerk of the board acceded to the request. She completed a Government Transportation Request [GTR] for Beierle, as was generally done for preinductees reporting to the Fairbanks office of the board for forwarding to the induction center at Anchorage. The GTR was limited to use on or before January 24, 1966, and Beierle used it on that date to travel to Anchorage. The clerk of the board noted on an appropriate sheet in Beierle's file that "[r]egistrant reported to office requesting approval to report for Ind. early—Clerk approved his request—."

After arriving in Anchorage on January 24th, Beierle reported to the armed forces induction center in the morning of January 25th. He produced his Order To Report for Induction, on which he, with a pencil, had crossed out "31st" and substituted "24th." The records of Beierle's earlier physical examination could not be immediately located. Therefore, after Beierle had waited for a time,

he was told by induction center personnel that he might take the remainder of the day off and return on the following day. He was furnished Government tickets with which to obtain his food. As directed, Beierle reported back to the induction center on January 26, 1966. On that day, he submitted to his preinduction physical examination and completed certain documents incident to the preinduction process. These included the armed forces security questionnaire and the election as to whether he would purchase life insurance under the Government program. Beierle testified that at this time he made a note on the physical examination form that he was a vegetarian and did not use animal products. He further testified that he also mentioned this fact to the examining doctor and that the doctor indicated that he could not help Beierle in this regard. On the same day, the 26th, Beierle was told to report back to the induction center on the following morning. As to the events of this following day, Beierle testified on direct examination as follows:

"Q What happened on the 27th at the induction station?

"A That was the date we were to take the oath.

"Q All right. This is the day that the induction ceremony was to take place, is that correct?

"A That is correct.

"Q Tell the jury what happened after you arrived at the induction station, just step by step what transpired, as you recall.

"A To the best of my memory we walked in and first we have the meal clerk with the meal tickets, you have to get meal tickets assigned for the day.

"Q Would you speak a little louder and slower.

"A First we received meal tickets. This is what I recall. Then I remember sitting around there, and Sgt. Ladwig would talk to us. He answered a lot of questions. Fellows would ask him questions about this or that.

"Q Now I didn't understand that— you asked some questions or he asked some questions?

"A No. He would answer some questions.

"Q He would answer some questions?

"A Yes. People would ask him some questions. It was just more or less, nothing really formal. Just seemed to be passing time. I believe we were dismissed then and told to report back at a certain time. I don't recall what time it was though, and I reported back. And shortly after that we were to go through the induction ceremony.

"Q What happened when you reported to go through the induction ceremony?

"A I believe there were seven of us. I'm not sure of the number though. We were led into a room, along with a lieutenant, I believe, and Sgt. Ladwig, and lined up. And the oath was read and we were requested to take a step forward.

"Q Did you take the step forward?

"A I told them—

"Q Just answer my question.

"A No, I didn't take the step forward.

"Q Now what happened then, or did you tell them why at that point you did not take the step forward as requested?

"A I wasn't sure why.

"Q You weren't sure why?

"A Why I wouldn't take the step forward. It didn't seem right for some reason." [1]

1. The record supports the inference, indicated by the testimony quoted above, that Beierle's decision to refuse induction was impulsive and was made at the last moment. Other of Beierle's testimony also indicates that his reason for refusing induction was not based on his nonuse of animal products, but rather arose out of a nonsectarian religious belief which would prevent him from submitting himself to the orders of his military superiors.

Thereafter, Beierle was taken into custody by the F.B.I., and he was incarcerated for the following days, including January 31, 1966, the day when he had originally been ordered to report for forwarding to an induction station.

Beierle was prosecuted under an information which charged as follows:

"THAT on or about the 27th day of January, 1966, at Anchorage, Alaska, in the District of Alaska, RICHARD BEIERLE did willfully and knowingly fail, refuse, and neglect to perform a duty required of him under the Universal Military Training and Service Act and the rules, regulations, and directions directly made pursuant thereto in that he did fail, refuse, and neglect to be inducted into the Armed Forces of the United States of America, all in violation of Appendix 50, United States Code Annotated, Section 462."

Beierle's principal defense below, as here, was that there was never a legal obligation to submit to induction on the *27th of January 1966*. His case appears to be unique. We have found no reported case in point, and neither the cases nor the Selective Service Regulations prescribe directly controlling rules.

■■ Two important facts are clearly established: (1) Beierle was originally under a duty to submit to induction on or sometime after January 31, 1966, and (2) he refused to submit to induction on January 27, 1966. Additionally, of course, it is clear that it is a crime to refuse to submit to induction when there is a duty to do so. 50 U.S.C. App. § 462. We are left, therefore, with one central issue: Was the time for performance of Beierle's duty to submit to induction accelerated to January 27th, so that it was a binding duty on that day. We are not concerned with

the creation of an obligation to submit to induction into the armed services. The question is *when* the duty, already extant, was to be performed. This dual nature of the obligation imposed by the Order To Report for Induction is clearly evidenced in the first sentence of the order: "You are hereby ordered for induction into the Armed Forces of the United States, *and* to report at [the appropriate office]. * * *" (Emphasis added.) We would, of course, be presented with a far different problem had no valid induction order ever been issued to Beierle. See Brede v. United States, 396 F.2d 155 (9th Cir. 1968).

■ In his brief, Beierle apparently argues under the misapprehension that he had been ordered to *submit* to *induction* on January 31st. Such is not the case; rather, he was ordered "to report * * * on the 31st * * * for *forwarding* to an Armed Forces Induction Station." (Emphasis added.) While in the document he was also "ordered for induction into the Armed Forces of the United States," the time for the induction itself was unspecified. This particular lack of specificity is quite understandable, since it is not likely that a local board, when fixing the time for a registrant to report for transportation, or "forwarding," would always know precisely when the military's induction personnel, perhaps at some distant induction center, would be able to take the registrant through the preinduction process to the final induction point.[2] As our own court has explained, "the command to submit to induction is the substance of the order, while the command to go to the induction center is procedural." Williams v. United States, 203 F.2d 85, 87 (9th Cir.), cert. denied, 345 U.S. 1003, 73 S.Ct. 1149, 97 L.Ed. 1408 (1953).

2. If, in the case at hand, the registrant had reported, as originally ordered, for "forwarding" on January 31st, had not arrived in Anchorage until February 1st, had undergone the physical examination and other preinduction procedures on February 2d, had refused to take the final induction step on February 3d, and has been charged with refusal to be inducted, he surely could not successfully contend that no duty to be inducted on February 3d was created by the induction order.

As we have previously observed, the Selective Service Regulations are silent on the subject of a voluntary acceleration of the time for reporting for induction.[3] The Regulations do provide, however, that in the event of certain types of occurrences, "the local board may, after the Order To Report for Induction * * * has been issued, postpone the time when such registrant shall so report for a period not to exceed 60 days from the date of such postponement. * * *" 32 C.F.R. § 1632.2(a). Furthermore, it is provided:

"A postponement of induction shall not render invalid the Order to Report for Induction * * * which has been issued to the registrant but shall operate only to postpone the reporting date and the registrant shall report on the new date without having issued to him a new Order to Report for Induction. * * *"

32 C.F.R. § 1632.2(d).

■ The local board fixes the reporting date in the first place. 32 C.F.R. § 1632.1. Taking this fact into account, and in the light of the postponement provisions of the Regulations, the proper authorities should be empowered to accede to a registrant's request for earlier forwarding to his induction station. A registrant would surely know that his initiative might accelerate the time when he would be required to complete the induction process. Furthermore, as is the case with a postponement of the reporting date, we do not believe that issuance of a new Order To Report for Induction is necessary.[4]

In contrast with those provisions of the Regulations which relate to postponement, the clerk of the local board should, it seems to us, be vested with the discretion to permit registrants, some of whom may have already travelled long distances, to report for earlier forwarding. It is the clerk of the board who is generally vested with the administrative functions of the local board, and the Regulations provide that registrants are to follow the instructions of the clerk as to the manner in which they will be transported to the induction center. 32 C.F.R. § 1632.14(b). The clerk would ordinarily be the official most knowledgeable as to the availability of transportation and other details pertaining to the completing of future inductions. On the other hand, postponement of a reporting date obviously should require the consent of the board members themselves. 32 C.F.R. § 1632.2(a). Postponement clearly might be harmful to the interests of the armed forces, whereas such an adverse effect would be rare indeed in the case of a registrant forwarded early for induction. Nor are registrants likely to suffer if the clerk extends them the courtesy of being forwarded at a time which suits their convenience and desire.

■■ Here the record provides substantial evidence to support a finding of

---

3. The Regulations do include provisions relating to persons who volunteer for induction, but as we interpret these rules, they are directed toward situations where the registrant who wishes to volunteer has not otherwise received an Order To Report for Induction. 32 C.F.R. §§ 1630.1–5; see 32 C.F.R. § 1632.1. These particular Regulations are not applicable to the situation before us.

4. The Regulations provide: "The local board shall issue to each registrant whose induction is postponed a Postponement of Induction (SSS Form No. 264), shall mail a copy of such form to the State Director of Selective Service, and shall file a copy in the registrant's Cover Sheet. * * *" 32 C.F.R. § 1632.2(b). This postponement notice serves several purposes, the most important of which is that it protects the registrant by giving him an official verification of the decision to postpone his reporting date.

There is no parallel to this postponement notice in Beierle's case. No reason appears, however, why such an official notice should be necessary in the case where a registrant voluntarily reports for induction early, since the outward acts of the registrant and the local board would speak for themselves. Additionally, in Beierle's case, the GTR, which was limited to use on or before January 24th, evidence the fact that Beierle was being permitted to report to the induction center early.

the presence of several crucial elements. These are: (1) That Beierle requested to be allowed to report early for forwarding to the induction center, (2) that the clerk of the local board gave Beierle such permission and, at Government expense, provided him with the means necessary to accomplish his wish, (3) that Beierle undertook to complete every phase of the preinduction process and at no time voiced objection as to time, and (4) that he was fully cognizant of the fact that he had entered into the preinduction process which would probably lead, before January 31st, to the final point of induction. We cannot, therefore, accept Beierle's claim that the time when he was obliged to fulfill his duty to submit to induction was not effectively accelerated.[5]

Affirmed.

BROWNING, Circuit Judge (dissenting):

This case is controlled by the holding of this court in Brede v. United States, 396 F.2d 155 (9th Cir. 1968), that a conviction under 50 U.S.C. App. § 462(a) (1964) based upon the violation of an order issued by a clerk cannot stand where the applicable Selective Service System regulations provide that orders of the type involved are to be issued by the local board.

The structure of the regulations relevant to the present case is simple and direct. Upon receiving a call from the State Director for a specified number of men to be delivered for induction, "each *local board* * * * shall select and order to report for induction the number of men required to fill the call from among its registrants. * * *" 32 C.F.R. § 1631.7 (1967). The *"local board* shall prepare for each man an Order to Report for Induction,"" specifying the

date for reporting. 32 C.F.R. § 1632.1 (1967). "When the local board mails to a registrant an Order to Report for Induction * * * it shall be the duty of the registrant to report for induction at the time and place fixed in such order." 32 C.F.R. § 1632.14(a) (1967). If for any reason "a registrant fails to report for induction when it is his duty to do so, it shall thereafter be his continuing duty from day to day to report for induction. * * *" *Ibid.* "Upon reporting for induction, it shall be the duty of the registrant * * * (5) to submit to induction." 32 C.F.R. § 1632.14(b) (1967).

The order issued by appellant's local board fixed January 31, 1966 as the date upon which appellant was to report for induction. Under the regulations, it was appellant's duty to report on the date fixed and to submit to induction. He was under no duty to report for induction prior to the date fixed, and he could scarcely be obligated to submit to induction before he was required to report for that purpose.

Nothing in the regulations authorized the clerk, rather than the board, to fix the date upon which appellant was required to report and to submit to induction. Since the clerk had no authority to fix or refix that date, the clerk's order imposed no duty upon appellant.

The majority notes that the regulations provide that if induction is postponed, "the registrant shall report on the new date without having issued to him a new Order to Report for Induction." 32 C.F.R. § 1632.2(d) (1967). It is significant, however, that if the period of postponement is terminated before its expiration date, "the registrant shall then report for induction *at such time and place as may be fixed by the local board*." 32 C.F.R. § 1632.2(c) (1967).

---

5. It is not necessary for us to determine the exact point at which Beierle's voluntary actions succeeded in accelerating the time for performance of his duty to submit to induction, so that he violated that duty on the 27th. Since he willingly went to the very brink of induction itself— at which time he apparently made his impulsive, last-moment decision—we need now hold only that at that time, when he was instructed to step forward to be inducted, he was under a then present duty to follow that instruction.

If a postponed date for reporting for induction may be advanced only by the local board, how can it be inferred that the clerk is authorized to advance the date initially fixed by the board?

The majority suggests that "the proper authorities should be empowered to accede to a registrant's request for earlier forwarding to his induction station." Perhaps the local board has such authority, implied from the power of the board to specify any date which is "at least 10 days after the date on which the Order to Report for Induction * * * is mailed. * * *" 32 C.F.R. § 1632.1 (1967). But here the local board did not act—the clerk did.